Arguments not to exceed 15 minutes per side. Ms. Swafford for the appellant. Good morning and may it please the court. Tara Swafford and Elizabeth Hart here for the appellant. Officer Trey Mansfield, I'd like to reserve three minutes for rebuttal. Fine. There are two questions before the court, whether the district court erred in granting summary judgment in favor of the city and whether the court erred in consolidating this case with another case brought by another officer against the city for an employment related matter. We would urge that both of those orders be reversed. My client is a veteran police officer in the K-9 department of the City of Murfreesboro. It's undisputed that he engaged in three acts of protected conduct. Following his efforts to stand up for his rights and the rights of other employees in the city, he was retaliated against by the city. The city does not tolerate someone rocking the boat, so they began retaliating against him with a pattern of harassment at the hands of Major Hudgens, which began in 2011. Those horribly offensive comments are laid out in our briefs, and I won't dwell on those now. But essentially, Major Hudgens went from being a proponent of the unit that Officer Mansfield participated in, the K-9 unit, to being a monster and blackballing that unit and going after my client. That continued all through this time until today, when my client reports for work. An adverse employment action occurred in 2013 when my client was not promoted. That's the only adverse action that's before us. This isn't a hostile work environment case. Correct, Your Honor. Yes. So I'll focus on that. My client was considered the acting sergeant of that unit by Captain Watkins, who was in charge of the K-9 unit. That's in the deposition testimony. So when the city created this official position of sergeant over the K-9 unit, my client was shocked that he was not the one who was promoted. So he sued under Title VII in the FLSA. Was he shocked that they had the process that they did, that is, where they took applications and what, eight people, seven, eight people applied, and they blah, blah, they were interviewed and so on? Was he shocked that that process occurred? Well, that is their normal process. Okay. But as Chief Christman testifies, he throws that out, and he makes the final decision. He doesn't even look at the rankings. That process occurs, and the chief makes the decision. Chief Christman chose Sergeant Wood, someone who had absolutely no experience in the K-9 unit, to be given this new position. My client was never given a reason. I thought there was a reason stated that he wanted a supervisor. Right. That's the reason after he sued. After the fact. Yes. So he was never told. He filed his EEOC charge, and then we get a reason, and that is that they don't have a reason. There was a conversation between the Assistant Deputy Chief Fields and Deputy Chief Bowen, where Assistant Chief Fields says to Deputy Chief Bowen, don't worry. All we have to do is come up with a reason why we promoted Wood. And then they came up with a reason. What's your basis of the statement that all of this interviews and everything was just a sham? Is that from a deposition of Christman, or exactly what does Christman say? That I pay no attention to any of this? He does. He says he doesn't even look at the rankings, that it is his decision, and he makes the call. The buck stops with me, he essentially says that in his deposition. So they're traveling on the supervisory reason as to why they chose Sergeant Wood, but when you look at the facts and the irregularities in this hiring process, that is pure pretext. The reason they did not choose my client is stated in Chief Christman's deposition, page 343 of the record, when he's asked point blank why he did not choose Officer Mansfield. And this is his answer. He says, I did not believe he was the best candidate. There were a number of factors to be considered in that process, but there are three that really are important to me. One was that Officer Mansfield had been openly, vocally critical of the supervision, management, and administration of the K-9 unit and the police department. And one of the things that you want people that you're going to place in a leadership position to be able to do is supervise themselves first. That doesn't, or correct me, that doesn't say that it either relates to the FLSA or to the sex discrimination. I mean, he complained about lots of things. Well, he really did not complain about a lot of things. He complained about the FLSA matter, and that's the only thing he complained about that relates to the entire police department. So if you construe this in the light most favorable to my client, that would be the only thing that Chief Christman could be referring to when he says that he was openly and vocally critical of the police department. That would be the FLSA matter. Not what the phrase says. He says, and administration of the K-9 unit and the police department. Right. So he's talking about both. As Judge Boggs is asking you, you might be able to parse that some things related to the entire police department and other things he complained about related to only the K-9 unit, but still he complained about multiple things. Right, and my point, Your Honor, is that the only thing he complained about that related to the entire police department that wasn't just a K-9 unit matter. Why would it matter whether if he's viewed as a complainer ignoring protected activity or not? If he's viewed as a complainer, and that's one of the things that Chief took into account, what difference does it make if he's complaining only about his own unit or whether he's complaining about the whole police department? Because the only complaint he made about the whole police department was protected conduct. I see. So that's why this, to me, is direct evidence of retaliation. At a minimum, it is circumstantial evidence of retaliation, and it is enough just right then and there to overcome summary judgment. But we won't stop with that. If you look at the irregularities in this hiring process, there are so many red flags. I'd point the Court to a decision from Jenkins v. Nashville Public Radio, 106 Federal Appendix 991, the Sixth Circuit, 2004, which said if you have irregularities in the hiring process, that's sufficient for causation and pretext. And the irregularities are stark. First, this was a promotion position. If you look at page 496, it is a promotion opportunity. It refers to General Order 224, which is on page 498 of the record. And that defines promotion as being the selection of an individual for advancement to a position of authority and responsibility beyond that previously held. Promotions are usually accompanied by a change in job description and salary level. And here, what happened was not a promotion. Sergeant Wood was already a sergeant. He was given no new job description, no different salary. And Chief Chrisman admits on the record, page 301 to 302, that never before has this happened. Never before had they put somebody in a promotion opportunity as a lateral transfer. So out of the people that were interviewed, were there others who would have been in the same position? In other words, were there others that should not have been allowed? I take it you're saying that Sergeant Wood shouldn't have been allowed to be interviewed, and were there others also who were already sergeants? Your Honor, everybody else was a patrol, a K-9 officer. One person was outside of the K-9 department, but was a patrol officer. And so would you have the same case if one of these other people had been selected? That's a very good question. It's a hypothetical, but perhaps look at the fact if Sergeant, I mean, Officer Hollibaugh had been selected. And he was given this question in his deposition. He said, well, do you think you were retaliated because you weren't selected? And he said, well, Officer Mansfield was the focus of the city's retaliation efforts. He said he was the one that was the most vocal about the FLSA matter and that he was the one who the city was holding back the K-9 department because of him. So I think I would have the same case because Officer Mansfield was the one that they were focused on. So I'd urge you to look at them. So he was really entitled to the position regardless of how many other people applied? Well, according to the captain over the K-9 unit, he was the acting sergeant. He was the one who helped formulate policy, helped deal with all the training records that are so specialized for this very specialized department. I mean, this is you. So they shouldn't have even posted it? That is, if he was the acting sergeant, he should have gotten it then? They have a process where they always post and they do the interviews. When you say he was acting, are you really putting acting in quotes in the sense that it wasn't a title acting sergeant, but he was in effect operating as the person who was acting? Yes, Your Honor. And those were the exact words of Captain Watkins. Based by Captain Watkins. He was kind of like my acting sergeant. Right. Because this, I mean, they're dealing with animals who can kill people. I mean, you have to be so trained to be a K-9 officer. It's different from just a normal, you know, uniformed officer that doesn't have an animal. And that's why we say that the second big red flag about this process was that someone with absolutely no K-9 experience was chosen to do this, someone who's never done this before, who has to be trained to do this, and then to supervise people who have been doing this for many years. The job posting or the requisition form for this position is on page 979 of the record, and it's giving the reason why they need to have this position. It talks about, in the second question on the second page, how they're expanding the department and that having a knowledgeable person to oversee the unit seems a prudent course of action is the reason given. And they did not make that choice because they did not want to promote my client or anyone who was rocking the boat at the Murfreesboro Police Department. If you look at page 1 of that new position form, it says that the cost impact, the fiscal impact for doing this is an increase in salary of $12,000. Well, that didn't happen because Sergeant Wood didn't get paid anymore. Operating costs for training of $250. And that didn't happen because Sergeant Wood had to be trained to do this, which would have been much more than $250. And it says zero for capital. And that didn't happen either because Sergeant Wood had to have a new car to have a dog. And so what was contemplated was someone within the department being promoted because at the same time the city created two new supervisor positions for two other specialized divisions, Parks and Motors, and it promoted from within. It did not go out and get somebody with supervisory experience like it did in this case because that's pretext. And then the last really big red flag is the fact that Major Hudgins ordered Sergeant Wood to apply for this position. That is testified to by five different sworn police officers that Sergeant Wood said he was ordered to do this. Chief Chrisman on page 283 to 284 of the record said he would have never done that. That's not what you do. You don't tell someone to apply for a position. I'm sorry. Who is it that said that? Chief Chrisman. So when you look at the facts and the red flags about the irregularities in this hiring process, that shows pretext, causation, and you just can't forget the whole continuum. Major Hudgins' comments started with that and continued. His inflammatory conduct to my client never stopped. The relief that you want here is the promotion, right? Well, we want our day in court, yes. Ultimately what you want in court is you want the promotion and you want the back pay for what he would have received. Is that right? Yes, Your Honor. I'm just curious how that works when of the eight people that went before the promotion board, Mansfield came in fourth. There's no suggestion that even absent this alleged discrimination that he would have gotten this position. So how do we, if we were deciding this, or how does a jury, if this goes back, resolve that? Because Chief Chrisman said it was his decision and he doesn't look at the rankings. That process is really a sham. That's fine, but even if he doesn't look at the rankings, you still have to assume. We'll ask the jury to assume then that absent the discrimination, your client would have gotten the promotion. In other words, ignore all the other seven. That's what we'll ask the jury to do. And what's the basis for that? The basis for that is my client's expertise and what was going on in the department. But you don't allege that the other police officers that were involved in the promotion board harbored that same animus against your client, do you? Some of them do. Captain Ginsmer particularly. He told my client not to circulate the petition for the FLSA and that it was a bad idea for him to sign it. How about the other ones that ranked the other candidates higher than your client? If you look at the rankings, my client is right. I mean, the difference between the rankings is just a couple of points. They're all right there at the top. But that's not the determinative factor because they didn't make the decision. I guess my point is, and I'm not sure what the answer to this is either, but I guess my point is, this goes back to a jury. A jury says, all right, he got discriminated against. We award him the promotion. What sort of claim, then, do the other three that ranked higher than he did have? In other words, because he sued, he gets the promotion even though they were ranked higher? It just doesn't seem right. Well, I mean, they haven't sued. They haven't made a claim. I understand that. Before the court is that of Officer Mansfield. So what does that mean? They didn't sue, so too bad? Well, I think it's a hypothetical question that is, I mean, if you have to look at what our case is under the standards, whether we have proven the prima facie case and whether we've met our burden of proof is the question. All right, thank you. I'm curious. Your case was consolidated with another. Does that affect whether you have a final judgment that you're appealing? There was an order in that case that allowed the other one to proceed. I don't know if you have any cases that deal with when you have consolidation of cases, whether when your client's case is concluded, so is there a final judgment vis-à-vis your client in this consolidated area? I have not seen any cases where that has even been a question. I understand why you would pose that. I think even though they're consolidated, my client's case ended. I mean, he has no ability to go forward with the summary judgment ruling. So there's no, it's effectively terminated vis-à-vis him. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Adam Tucker, Assistant City Attorney for the City of Murfreesboro, here on behalf of the city this morning. I'd like to address some of the questions that the panel posed to Ms. Wofford to hope to clarify a couple of things. The first is with respect to what is the role of the interview board, the interview panel, the seven police officers that interview the candidates. That's clearly set forth in General Order 224. Typically, when there is a promotion opportunity or a lateral transfer or specialized assignment, you have more than eight applicants. The purpose of the interview board is primarily to reduce the number of applicants to ten who would then be interviewed by the chiefs. In this instance, there were only eight applicants. Therefore, there was no need to reduce the number of applicants who would be interviewed by the chiefs. Nevertheless, the Department of Administration decided to follow its typical practice of empaneling an interview board and allowing them to interview the candidates. So that's that purpose there. But it is true that once- Normally, the interview board just reduces the number to ten and doesn't rank the candidates? No, I'm sorry. What it would do is say, for example, if there were 15 candidates, applicants for a position, the interview board would interview all 15 applicants. They would then rank them one to 15 in terms of the average view of the panel members who were the top ten applicants. Those top ten applicants would then be interviewed, and only those top ten applicants would be interviewed by the chiefs. But the ranking by the interview board is essentially irrelevant within that group of ten? Once you get to the chiefs' interview, yes. But I think it's relevant in this case because not to specifically as an input or something that Chief Christman took into consideration in making his decision, but it does go to whether Chief Christman's decision was reasonable and whether it was motivated by legitimate, non-retaliatory considerations. So your opponent said that Christman said that he does whatever he thinks is right regardless? Well, under the general order, he has discretion and has the ultimate call to decide who is promoted, who is selected for a special assignment, who is transferred from one unit to another, a lateral transfer. And it's true in this case that the selection of Sergeant Wood effectively was a lateral transfer. But there's undisputed evidence in the record that the reason the department set the process up this way was they were looking for the most qualified individual in the department to fill this position. They needed a supervisor. And there are two skill sets here. There is the technical skill set of being a canine handler and the kind of the more soft skills of being a good supervisor, a good leader. And the evidence shows that the department and the chiefs placed the emphasis on the latter. They wanted a good supervisor. I don't understand why there isn't a fact question here, why the plaintiff hasn't produced enough evidence to show both causation, at least a fact question on causation under the prima facie case and a fact question on pretext. Well, first of all, Your Honor, on the prima facie case, there's a requirement that they be considered similarly situated. Here, they're not similarly situated because they are of different ranks. They had different experience. One had supervisory experience. This was a supervisory position. True, Officer Mansfield had technical experience. But the case law consistently shows that it is incumbent on Officer Mansfield to show that he had similar qualifications as the person who was ultimately selected for the canine position. Was that the basis that the district court granted you a summary judgment on, that they weren't similarly situated? No, it wasn't, but that was presented in the city's motion for summary judgment, and it is supported by the record. But I think here the more important issue with the qualifications comes to pretext. Employers are entitled to make and have discretion as to who to place in a particular position. That was true of Chief Crisman here. He had the discretion to make what he thought was the best decision for the department. Well, given that Crisman said, and correct me if I'm wrong, but somebody said, and I thought it was Crisman, that Mansfield was unduly critical of the department and the canine corps, why wouldn't that be a fact question then as to what motivated Crisman in his choice of somebody other than Mansfield? Well, the question of being critical of the canine corps is not retaliation. That's not a protected activity. No, but the criticism of the police department was based on the FLSA. Well, I think if you look at the whole of Chief Crisman's testimony as to why he did not select Officer Mansfield and why he selected Sergeant Wood for the position, it is clear that he's not talking about protected activity. The context of that testimony and his concern has to do with whether Officer Mansfield is going to be a good supervisor, whether he is going to carry out the policies and operations selected and required of him as a supervisor as determined by his superiors. What did Crisman say was wrong with Mansfield's abilities to supervise? Well, it's laid out fully in the brief, in the entire passage, but specifically it was that he felt that he was not a good supervisor of himself and that he needed to be a good supervisor and kind of follow the mandates and orders of superiors. That was something that you needed to have as a frontline supervisor. You're dealing with police officers and you are in the middle between communicating the orders, the policies established by the police command staff and making sure that's implemented properly and carried out by frontline police officers. I guess the problem is that Mansfield sort of made a name for himself in challenging the fair labor standards violations of the city, right, of the police department. He was one of a number of officers that numbered in the dozens that signed on to this proposed lawsuit that was settled. So he was not... And was settled in favor of the employees giving them proper lunch break treatment. Well, what the city determined is that treatment should be... that the mealtime essentially should be treated as time worked. And so, therefore, whether they were actually eating or whether they were carrying out their duties as a police officer during what would be a lunch break, they were going to get paid. So that was the result. So you have that aspect. And then you have this treatment of Mansfield by Major Hudgens where he says, I think I'll fuck with Trey Mansfield today. And Hudgens says that when Mansfield says his new schedule would make child care difficult, Hudgens says, I guess your precious little princess will have to fucking deal with it. So we have this kind of background by Hudgens, who is a major player. He is, after all, Major Hudgens. Now, I understand that Hudgens was not... at one point was taken off the promotion board. He volunteered to avoid any appearance of bias. He asked to be removed from the panel, and he was removed. He was not a decision maker in this case, especially with respect to Officer Mansfield. He had played two roles. One, he, at the request of Deputy Chief Bowen, drafted some interview questions to be asked of all of the applicants by the interview board. We know what those questions were. Yes, they are in the record, Your Honor. I don't have the site, but they appear... He drafted six. The chief reviewed them, selected five of those six. Looking at those questions, they are... there is nothing, looking at the face of those questions, that one could reasonably conclude were intended, or, in fact, would undermine Officer Mansfield's candidacy. So that's not relevant. Secondly, after the chiefs had interviewed all eight applicants, the chiefs narrowed it down to two, Officer Ryan Hollibaugh and Sergeant Wood. At that point in time, because the two captains in the uniformed division and the major, Major Hudgens, were going to be the people who were working closely with whoever was put in this Sergeant K-9 position, those three individuals were brought in and asked by the chiefs their opinion about the relative qualifications of these two individuals. Again, you had someone who, in Officer Hollibaugh, had K-9 experience. In Sergeant Wood, you had someone who had supervisory experience. And they were struggling to make that determination. But Officer Mansfield had already been eliminated by the chiefs. So whatever Major Hudgens said in that meeting was not relevant to Officer Mansfield's candidacy. So even if he had retaliatory animus towards Mansfield, it did not influence the chief's decision, and in particular... Did I remember correctly that your adversary indicated that he had been involved in some way in the FLSA complaint? Yes, he had signed the petition to support the lawsuit. Yes, Your Honor. So what this really comes down to is whether the police department and the chief of police in particular have the ability to choose who they think is best suited for a position. And that's what they did in this case. And that decision is reasonable. Don't have to agree with it. It might have been the wrong decision, but it wasn't retaliatory. Reasonable people could disagree as to whether supervisory experience should trump K-9 experience. But as Chief Chrisman said, the technical expertise of being a K-9 handler is something that could be learned. And one final point of clarification with respect to the K-9 position here. The dogs in the K-9 unit are not just bite dogs or patrol dogs. There are detector dogs and tracking dogs, bloodhounds. They're not all dogs that are going to be, you know, that are trained to attack and subdue. So, yes, there is technical expertise, but it's, in fact, Sergeant Wood ultimately received a detector dog. In closing, I would just like to note that in their reply brief, the Officer Mansfield's counsel cites to the jury verdict in the Matthew Rowe case. That case is not before this court. It was not before the district court, and any reference to that would be inappropriate. The district court's decision is supported by the record, and this court should affirm for the same reasons that are in the record. Thank you. I'll ask you the same question I asked your opponent at the end. Sure. Do you know anything about whether the fact that this was a consolidated case impacts whether there's a final judgment that's immediately appealable here? I would tell you that my assumption is that it was something that was immediately appealable and that the district court since has entered a court order severing the decision or the cases. And with respect to, you know, consolidation, I think the city's motion at the time it was made was made on good grounds and should have been granted, but it was delayed. The decision was delayed for six months. So the city readily concedes that at this point in time, if this case were to be reversed and remanded, what should happen is the district court should look to see the relative status of the cases and make a determination going through the factors that are relevant to consolidation and make a new determination as to whether the case should be consolidated. Thank you. Thank you, Your Honor. Thank you. On the record, page 322 is where Chief Christman said it's his decision as to who to be made sergeant. And whether that decision was a reasonable one is a question of fact. We would submit. I would again direct you to Officer Holbaugh's testimony about that, page 887 to 899, where he also talks about, you know, choosing someone who has no experience to do this job and the aftermath of what that has meant to have a supervisor with no experience of doing that job, what that's meant to the unit. Regarding Holbaugh's position in the FLSA matter, there's no evidence that they knew he participated in that effort at the time they were considering the promotion to sergeant. Regarding Major Hudgins, never before had the chief taken this extraordinary step of talking to the major to get his opinion before making the decision as to who to get this promotion. Chief Christman said he never did this before. Major Hudgins said this was never before. So the chief solicited the major's opinion, and he directed him to Sergeant Wood. But for Major Hudgins ordering Sergeant Wood to apply for the job, something that was an extraordinary act, but for him doing that, he wouldn't have even been in the pool of candidates. So when Major Hudgins tells you to do something in this police department, you are going to do it. And I want to emphasize what a huge deal this FLSA matter was. It not only cost the city $1 million a year in increased salary, it turned the pay scale on its head for years. It took years before the city was able to rectify. You had majors who were making almost the same thing as captains, as lieutenants, excuse me, and lieutenants who were making more than captains because of this increase in pay to the hourly employees. The chief, when he announced that the city changed its policy in roll call, Officer Mansfield testified that he did it through gritted teeth and said you will get more money. This was something that just upset the command staff of that department to end. We have memos from Major Hudgins in the record where he's complaining about the new pay scale as a result of this FLSA matter. And all of these abhorrent comments from Major Hudgins when he changed his attitude to my client turned on my client being one of the vocal supporters of this matter. And I just want that not to be lost on the court that when you do something like this in this environment, which is a very retaliatory environment, we have facts on the record about how Captain Ginsmer told Officer Hollibaugh, who wrote a complaint on his employment review, a complaint about how something was being handled, and he said do not leave that on your form or you will be blackballed and you will be a 30-year patrolman, meaning you'll never be promoted, told him to take it off the form. So do you have record evidence that Hudgins changed his attitude towards Mansfield after the FLSA matter? So like the language that I quoted, that came from after? It was at the same time that they learned of his participation in that. Major Hudgins, Captain Watkins, who was in that meeting, testified to that, saying it was at the same time. Sorry, which meeting? The meeting where Major Hudgins said to my client, your little princess is going to have to deal with that. I'm going to take the words K and 9 out of my vocabulary, that meeting. My client testified that Captain Ginsmer had a copy of the petition, and it's his belief that he told that to others. Ginsmer knew my client was signing the petition, warned him not to. Chief Chrisman says he knew. I mean, the city tries to say they didn't know about it until August when the letter was sent, raising this officially to the city attorney. But Chief Chrisman, on page 336, says he knew that there was this movement within the department to get signatures before that happened. The inappropriate language from the major directed at your client came in connection with the complaints about the shift changes, didn't it? That's the city's position. Our position. What's your position? Our position and my client's position and Captain Watkins' position, who was at the meeting, is that it was a result of my client standing out for the FLSA change in the payments for the meal break. It happened contemporaneous with that, and it's a disputed fact at a minimum. It's a disputed fact. We have evidence that shows that he knew. The city denies that he knew. And for that matter, this whole case is riddled with disputed facts. And for that reason alone, it's not proper to have granted summary judgment. Thank you. Thank you both for your argument. The case will be submitted.